Arnold Reed
Michigan Bar #P46959
3225 Northwestern Hwy Ste 251
Farmington Hills, MI 48334
Phone: (248) 855-6330
Fax: (248) 855-6340
e-Mail: arnoldreed@earthlink.net

Attorney for Plaintiff
(appearing pro hac vice)

Local Counsel Kendric V. Rollins
California Bar #170564

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARETHA FRANKLIN,<br><br>Plaintiff,<br><br>vs.<br><br>ALAN ELLIOTT, and, AL'S RECORDS AND TAPES,<br><br>Defendant. | Case No: CV 11-7225 PA (Jemx)<br><br>Judge: Percy Anderson<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: November 28, 2011 |

## INTRODUCTION

Defendants, by their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6) claim Plaintiff 's complaint fails to state a claim upon which relief can be granted regarding the following allegations: (i) Preliminary Injunction, (ii) Violation of Common Law Right of Publicity, (iii) Violation of 17 U.S.C. section 1101(1), (iv) Breach of Contract, (v) Statutory Right of Publicity claim pursuant to Cal. Civ. Code section 3344, (vi) Unjust Enrichment, (viii) violation of Right of Publicity, and (viii) Unjust Enrichment. In fact, Plaintiff's Complaint, which alleges (1) the

stealing of Plaintiff's name and likeness should be immediately halted by a Permanent Injunction; (2) Defendants committed a violation of Common Right to Publicity (State Law Count) by misappropriating Plaintiff's name and likeness for commercial gain; (3) Defendants Violated the Federal Anti-Bootlegging statue by using and or transferring Plaintiff's image and/or voice to the public which originated from her live performance in 1972; (4) Defendants open and hostile efforts to breach a state law contract with Warner Brothers of which Plaintiff has rights as a third-party beneficiary; (5) Breach of Statutory Right of Plaintiff's Publicity pursuant to California Civil code for repeated attempts to exploit Plaintiff's name and likeness without authorization and for commercial gain; (6) Unjust Enrichment (state law count); (7) Violation of Right of Publicity (state law count) for receiving large sums in connection with the exploitation of Plaintiff; (8) Unjust Enrichment (state law count), very clearly states a claim upon which relief can be granted under California Jurisprudence as discussed below.

## I. COUNTER-STATEMENT OF FACTS

Plaintiff is a world renowned vocalist and musical artist. Plaintiff was recorded in 1972 performing several songs from her album entitled "Amazing Grace." Plaintiff became aware that Warner Bros had obtained title to these recordings and that in 2007 the Defendant obtained title. Plaintiff never authorized the 1972 recording of her performance. (*See* Ex. B, Declaration of Aretha Franklin

attached to Plaintiff's Ex parte Application for Preliminary Injunction, Verified Complaint and incorporated by reference herein.) Plaintiff also never authorized the use of this footage or the release of a movie based on said performance. (*See id.*)

Plaintiff became aware that a movie entitled "Amazing Grace" was being produced, created, developed, and promoted for release by the Defendant. Plaintiff did not find the terms of the initial option contract offered by Defendant amenable and as a result did not agree to them. Thereafter, Plaintiff became aware that Defendant intended to proceed with the project and with the release without her consent or authorization. (See Exhibit B). Plaintiff then filed this action asserting violation of Publicity Rights against Defendant.

## II. ARGUMENT

### A. PLAINTIFF'S CLAIMS SHOULD NOT BE DISMISSED UNDER FED. R. Civ. P. 12(b)(6).

According to the United States Supreme Court, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

In an extended discussion of Rule 12(b)(6) in 5 Wright & Miller, *Federal Practice and Procedure* §§ 1355-1358, pp. 587-626, the limited role of this motion in the disposition of cases is emphasized. Under Federal practice, motions to dismiss for failure to state a claim are viewed with disfavor and rarely granted. *See id.* § 1357, p. 598. This is in part due to the fact that in considering such motions, the factual allegations of the plaintiff are accepted as true along with any conclusions that can reasonably be drawn therefrom. *See id.* § 1357, p. 597. However, this attitude also reflects the policy under modern rules of procedure to dispose of cases according to their merits, rather than by applying technical rules formalistically to bar meritorious claims.

As recently summarized by the U.S. District Court for the Central District of California:

> A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In deciding a Rule 12(b)(6), the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).
>
> *Kohler v. CJP, Ltd.*, — F. Supp. 2d —, —, 2011 WL 3190185, at *5 (C.D. Cal. 2011) (ultimately denying the motion to dismiss).

In the instant case, the factual allegations of the plaintiff must be accepted as true, along with any conclusions that can reasonably be drawn therefrom. The Plaintiff has clearly stated a claim for which relief can be granted. She must be given the opportunity to develop her case through discovery.

**B. PLAINTIFF HAS STATED A VALID CLAIM UPON WHICH INJUNCTIVE RELIEF SHOULD ISSUE.**

On August 31, 2011, Plaintiff filed a well pleaded Verified Complaint with a request for restraining order and demand for trial by jury seeking to enjoin the Defendants from infringing upon her rights of publicity by proceeding with the release of the unauthorized film "Amazing Grace." (See exhibits attached to Plaintiff's Ex parte Application for Preliminary Injunction, Verified Complaint and incorporated by reference herein). The Court may grant a Preliminary Injunctive relief to a party who can demonstrate by a preponderance of the evidence either "(1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardship tips in its favor. These two formulas represent two points on the sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *A& M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (internal quotation and citation omitted). If both of these formulas can be satisfied, then the Plaintiff's injunctive relief should be very compelling. Further, a "(serious question)" is one in which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984). In reference to the above legal principles, Defendants in support of their 12(b)(6) Motion to Dismiss cite to the case of *Southwest Voter Registration Education Project v. Kevin Shelly*, 344 F.3d 914, 917 (9th Cir. 2003). In Southwest, suit for injunctive relief was brought alleging that a plan used for "punch-card balloting machines" in California's gubernatorial recall election

violated the equal protection clause in the Voting Rights Act. *Id.* The District Court for the Central District of California denied the preliminary injunction. The Court of Appeals reversed. *Id.* Subsequently, on rehearing en banc, the Court of Appeals held that the District Court did not abuse its discretion in denying the injunctive relief. *Id.* Southwest is completely inapposite to the case at bar. The Court of Appeals in its ruling took into consideration the interest of the entire State of California by reasoning that even though the Plaintiff showed a possibility of success on the merits of their claim, that Plaintiff would suffer no hardship that would outweighed stake of the State of California and the citizens in having an election go forward as planned and as required by California Constitution. *Southwest* at 914. Essential to the Court's decision was the fact that Plaintiff's request for injunction implicated a statewide election.

> "There is no doubt that the right to vote is fundamental, but a federal court cannot lightly interfere with or enjoin a state election." *Id.* at 918. Citations omitted. The decision to enjoin a pending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation. *Id.* (Citation omitted.)

Clearly, Defendants in the case at bar, misapprehend the import of the reasoning and sound logic of the Southwest jurisprudence. Unlike there, in the instant case, the entire state of California is not implicated by Plaintiff's lawsuit. Plaintiff in the case at bar, is attempting to stop two Defendants from using her name and likeness for commercial purposes without her permission. More than sufficient factual allegations have been plead by Plaintiff regarding Defendants' unauthorized commercial misappropriation and as such, Defendants' Motion should be denied.

**C. PLAINTIFF HAS PROPERLY PLED AND CAN ESTABLISH A HIGH PROBABILITY OF SUCCESS FOR A VIOLATLION OF THE COMMON LAW RIGHT OF PUBLICITY**

Assuming arguendo that the movie in question has not been formally released as Defendants claim, Plaintiff has clearly alleged in her complaint sufficient facts to show Defendants have used her name and likeness for commercial purposes in connection with the unauthorized filming rendering a "formal release" unnecessary.

California common law recognizes this right of publicity in a person's name, likeness and identity.[1] While California also has a statutory provision to govern the right of publicity, the common law governs a broader range and more expansive scope of interests.[2] The elements of the right of publicity claim at common law are "(1) the defendant's use of Plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercial or otherwise; (3) lack of consent; and (4) resulting injury."[3]

As properly pled in Plaintiff's well pleaded complaint, there is no question that the Defendant "used" the Plaintiff's identity or likeness. Not only was the

---

[1] *See Middler v. Ford Motor Company*, 849 F.2d 460, 462 (9th Cir. 1988).

[2] *See White v. Samsung Electronics America, Inc.,* 971 F.2d 1395, 1397-99 (9th Cir. 1992).

[3] *Eastwood*, 198 Cal. Rptr. at 347.

Plaintiffs identity used in the film which was released without authorization, but it was also used in promotional materials as well (*See* Ex. F, attached to Plaintiff's Exparte Application for Preliminary Injunction, Verified Complaint and incorporated by reference herein.) Equally evident, as explained in Plaintiff's complaint, is the fact that the Defendant, a producer, has been and will continue to be advantaged from the appropriation, or more accurately, the misappropriation of the Defendant's name or likeness. Firstly, the Plaintiff will and indeed already has been economically advantaged by releasing the film itself. Even the Defendant's own modest projections which were provided to the Plaintiff during a failed negotiation attempt project revenues exceeding two million dollars. (See Exhibit A, attached to Plaintiff's Ex parte Application for Preliminary Injunction, Verified Complaint and incorporated by reference herein). These substantial economic gains represent a significant advantage that the Defendant has obtained through the misappropriation of the Plaintiff's name and likeness. Additionally, the advantages that the Defendant has gained and continues to gain exceed those strictly economic in nature and include the commercial advantages of enhancing the defendant's resume, professional repute and industry clout which in turn leads to further commercial opportunities. Indeed the Defendant's own efforts to secure an agreement with the Plaintiff include furnishing a curriculum vitae listing his work with other celebrities, seemingly an effort to *sell* the Plaintiff on his prominence or

status.[4] Defendant has released the film to movie executives and other insiders through varies screenings in several major cities. Defendant's production and unauthorized release of *Amazing Grace* has and will continue to serve this same purpose of bolstering the Defendant's resume, reputation and clout for commercial purposes. Accordingly, the defendant is benefiting from the misappropriation of the Plaintiff's name and likeness indirectly as well as in ways not limited to economics at all.

The third element at common law is satisfied by the clear and undeniable fact that the Defendant never obtained the Plaintiff's consent to release the movie. Amazingly, in more than one instance, Defendant admits this fact in his motion to dismiss. The Defendant's quick claim agreement with Warner Bros; wherein, he purchased the deeds of the footage originally owned by the late Sidney Pollack, clearly indicates that the Defendant must obtain consent from the Plaintiff before he uses the material (*See* Ex. H: Quick Claim Agreement attached to Plaintiff's Exparte Application for Preliminary Injunction, Verified Complaint and incorporated by reference herein.) Initially, the Defendant seemed to recognize the need to obtain the Plaintiff's authorization because he made efforts—albeit unsuccessful—to obtain the Plaintiff's consent. (See Exhibit E: Proposed Option Contract offered to Plaintiff attached to Plaintiff's Exparte Application for

[4] *See* Ex. G: Curriculum Vitae/Bio attached to Plaintiff's Exparte Application for

Preliminary Injunction, Verified Complaint and incorporated by reference herein). Notwithstanding these efforts, a fair and mutually beneficial agreement was never established. Hence, the Defendant is not able to abandon negotiations and violate the Plaintiff's rights of publicity merely because the Defendant was unable to offer terms that the Plaintiff was amenable to.

The fourth element, injury, is satisfied because Plaintiff's revenue resulting from the use of the name, voice and likeness of Plaintiff deprives Plaintiff of money she could make by exploiting her own right to publicity independently or through licenses. Additionally, the substantial revenues which the Defendants have received as a result of releasing this film amount to injury to the Plaintiff which demonstrates a likelihood of success on the merits of her claim for violation of the California common law and statutory right to publicity.

**D. PLAINTIFF HAS STATED A VALID CLAIM UPON WHICH RELIEF SHOULD ISSUE PURSUANT TO THE FEDERAL ANTI-BOOTLEGGING STATUTE.**

In addition to standard common law copyright protections, the United States Congress has passed a specific statute protecting against the distribution of bootleg concert videos. 17 U.S.C. § 1101(1) provides in pertinent part:

> (a) Unauthorized Acts.--Anyone who, without the consent of the performer or performers involved--

Preliminary Injunction, Verified Complaint and incorporated by reference herein.

(1) fixes the sounds or sounds and images of a live musical performance in a copy or phonorecord, or reproduces copies or phonorecords of such a performance from an unauthorized fixation,

(2) transmits or otherwise communicates to the public the sounds or sounds and images of a live musical performance, or

(3) distributes or offers to distribute, sells or offers to sell, rents or offers to rent, or traffics in any copy or phono record fixed as described in paragraph (1), regardless of whether the fixations occurred in the United States, shall be subject to the remedies provided in sections 502 through 505, to the same extent as an infringer of copyright.

This Court in *Kiss Collection, LTD v. Passport International Productions*, 405 F. Supp. 2d 1169 (C.D. Cal. 2005) ruled that this law protects recordings of broadcasts which may have been lawfully made in the first instance, but then distributed in violation of the performer's permission. The Court further held that the statute protects the artist even where the recording predates the effective date of the act, but was distributed afterwards. The Court also turned back a constitutional challenge to the statute.

It strains credibility when the Defendant claims that not a single element in the above statue is supported by Plaintiff's complaint. At the time Plaintiff filed her original verified complaint and application for preliminary injunction, attached thereto were several documents and exhibits (attached to Plaintiff's Exparte Application for Preliminary Injunction, Verified Complaint and incorporated by reference herein) which clearly established more than sufficient evidence of

Bootlegging in violation of Federal Statute. For example, Exhibit B is Plaintiff's uncontroverted affidavit which in pertinent part states . . . [M]r. Alan Elliott has plans to release a movie based on my 1972 performance...which exploits my name and likeness solely for commercial purposes." In addition, Affiant, Ms. Rhonda Jacobs, who watched the video in its entirety stated that the . . . [v]ideo is more than 128 minutes long with more than 80% directly focused on Aretha Franklin Performing her songs." (*See* Ex. C, Affidavit of Rhonda Jacobs.) Finally, Plaintiff admits that, "I have been working with Mr. Rick Levy to make sure a finished "Amazing Grace" movie will receive the special attention it commands, starting with a screening at the White House." (*See* Ex. D, letter to Plaintiff authored by Defendant in 2008.) At the very least, there is evidence to support as plead in Plaintiff's complaint, that Defendants fixed Plaintiff's voice and image, transmitted same for profit without legal authorization. Such being the case, Defendants' 12(b)(6) motion should be denied in its entirety.

**E. PLAINTIFF HAS MORE THAN SUFFCIENTLY STATED A CLAIM UPON WHICH RELIEF SHOULD BE GRANTED FOR BREACH OF CONTRACT.**

As sufficiently plead in the complaint attached hereto, Ms. Franklin has a highly viable breach of third-party beneficiary contract claim.[5] California state law

[5]"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

recognizes that a party can be a third party beneficiary to a contract and could have standing to sue. [6] Here the contract provided that Ms. Franklin's consent was required for the Defendant to proceed. Defendant ignored this requirement, constructed a flawed theory why Ms. Franklin's interest in her performance were unprotectable and decided to proceed without her consent. Contrary to Defendants' claim that Plaintiff's complaint does not show resulting damage, as laid out in Plaintiff's complaint, Defendant has began showing the movie and making profits from these showings. Early in 2011, Defendant circulated to the national media promotional material clearly stating … [T]he film has never been seen until now." (*See* Ex. F, attached to Plaintiff's Ex parte Application for Preliminary Injunction, Verified Complaint and incorporated by reference herein.) Plaintiff has not received any financial gain or otherwise from promotions or movie showings. Moreover, from these showings and promotions, as pointed out in Plaintiff's complaint, Defendants forecast revenues surpassing the $2 million mark.

This Court must enforce the contract as written.[7] Here, Warner Brothers was concerned with protecting both the rights of Ms. Franklin and her good will. It

---

defendant's breach, and (4) resulting damages to plaintiff." *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1367, 108 Cal. Rptr. 3d 682 (4th Dist. 2010) (italics omitted.)

[6] *RGIS LLC v Bank of America*, NA, 20LL 1991989 (Cal App 2d Dist, 2011).

[7] *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944, 955, 135 Cal.Rptr.2d 505 (2003).

correctly made a decision to grant her contractual power to refuse this agreement. She has done so and her wishes should be honored.

This Court cannot "unring the bell." Ms. Franklin has made the decision that she does not wish this performance being introduced into the public stream at this time. Without an injunction, the damage will be done.

**F. PLAINTIFF HAS CLEARLY STATED CLAIMS UPON WHICH RELIEF SHOULD BE GRANTED FOR UNJUST ENRICHEMENT.**

California courts have long recognized a cause of action based on unjust enrichment.[8] By Defendant's wrongful acts and omissions, ( as plead in Plaintiff's complaint as well as evidenced by Plaintiff's Exhibits A through I, which were attached to Plaintiff's original motion which was filed with the original complaint), Defendant has unjustly enriched himself at the expense, and to the detriment, of the Plaintiff. The Defendant has violated and continues to violate the Plaintiff's rights of publicity through his release and continued promotion of *Amazing Grace*. The release of this film has lead to substantial economic gains by the Defendant (*See* Ex. A: Revenue Projections attached to Plaintiff's Exparte Application for Preliminary Injunction, Verified Complaint and incorporated by reference herein) which Defendant is not entitled to receive. Additionally, by presenting the film as if it was authorized by the Plaintiff and by promoting and releasing said film,

[8] *Western Pac. R. Corp. v. Western Pac. R. Co.*, 206 F.2d 495, 498 (9th Cir. 1953); *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000).

Defendant has also boosted his reputation and recognition in the industry which invariably leads to further opportunities to be unjustly enriched and to exploit the name, image and voice of the Plaintiff without her authorization. Although, Defendant may own the deeds to the footage, he has not obtained Plaintiffs full and complete release and authorization to use the material.

By releasing Amazing Grace without authorization and using it for commercial purposes, the Defendant has gained hundreds of thousands of dollars to date and has also led to an amount in controversy which far exceeds $75,000.

**CONCLUSION**

It is now well-settled that a complaint should not be dismissed for failure to state a claim provided that the complaint contains sufficient factual matter to state a claim that is plausible on its face. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955. This is in part due to the fact that in considering such motions, the factual allegations of the plaintiff are accepted as true along with any conclusions that can reasonably be drawn therefrom. 5 Wright and Miller, *supra*, § 1357, p. 597, *see supra* at p. 3. For the foregoing reasons, Plaintiff respectfully requests the Defendants' Motion be denied in its entirety and that this Honorable Court grant any and all other relief deemed just and equitable.

/s/Arnold E. Reed
ARNOLD E. REED & ASSOCIATES, P.C.
Attorney for Defendant
32255 Northwestern Hwy., Ste. 251

Farmington Hills, MI 48334
(248) 855-6330
arnoldreed@earthlink.net
(P46959)

Dated: November 22, 2011

Arnold Reed
Michigan Bar #P46959
3225 Northwestern Hwy Ste 251
Farmington Hills, MI 48334
Phone: (248) 855-6330
Fax: (248) 855-6340
e-Mail: arnoldreed@earthlink.net

Attorney for Plaintiff
(appearing pro hac vice)

Local Counsel Kendric V. Rollins
California Bar #170564

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARETHA FRANKLIN,<br><br>Plaintiff,<br><br>vs.<br><br>ALAN ELLIOTT, and, AL'S RECORDS AND TAPES,<br><br>Defendant. | Case No: CV 11-7225 PA (Jemx)<br><br>Judge: Percy Anderson<br><br>**[PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

This matter having come before this Honorable Court on November 28, 2011 on Defendants' Alan Elliott and Al's Records and Tapes' Motion to Dismiss Plaintiff Aretha Franklin's eight causes of action for failure to state a claim upon which relief can be granted is denied.

The Court reviewed the parties' written submissions and finds that Defendants' Motion to Dismiss should be denied.

Therefore, based upon the above findings and being fully advised on the matters, it is **ORDERED** that Defendants' Motion to Dismiss is denied in its entirety.

______________________________
Honorable Percy Anderson
U.S. Magistrate Judge

Presented by
/s/ Arnold E. Reed
Arnold E. Reed
Law Offices of Arnold E. Reed & Associates, P.C.
Attorney for Plaintiff